**2024 UT App 166**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TRAVIS JAMES GROCE,
Appellant.

Opinion
No. 20240362-CA
Filed November 15, 2024

Third District Court, Salt Lake Department
The Honorable James T. Blanch
No. 241902112

Ann M. Taliaferro and Jackie Reidelberger,
Attorneys for Appellant

Sean D. Reyes and Hwa Sung Doucette,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and JOHN D. LUTHY concurred.

HARRIS, Judge:

¶1     Travis James Groce is being held without bail pending resolution of a criminal information charging him with, among other things, attempted child kidnapping. In making its original pretrial detention determination, the district court found that there was substantial evidence to support the charges and that Groce was a substantial danger to the community. And later, after the preliminary hearing, the court determined that no material change in circumstances had occurred that would justify a change in Groce's pretrial detention status. Groce appeals, and challenges two of the court's pretrial detention orders.

¶2      In response, the State defends the court's rulings on their merits, but it also contends that Groce's appeal has been mooted by the court's subsequent reconsideration of the pretrial detention issue and repeated denial of Groce's continued requests for bail.

¶3      For the reasons discussed, we conclude that the issue raised by Groce's appeal—whether he is properly being detained pending resolution of the charges—has not been rendered moot by subsequent events. And on the merits of the matter, we reject Groce's arguments and affirm the challenged orders.


BACKGROUND

¶4      In February 2024, the State arrested Groce and filed an information charging him with attempted child kidnapping and with being a sex offender in a protected area. The information came accompanied by a "declaration of probable cause," in which a police officer explained that just days earlier, Groce—a registered sex offender—had driven into the parking lot of an apartment complex that had a playground. While there, Groce parked his "black SUV Tesla" next to the playground and left his "driver side door open." With the door open, Groce was then seen "waving" to a three-year-old girl (Child) "with his hand extended, palm facing up and curling his fingers towards him multiple times," as if he were beckoning to Child; one person told the officer that Groce was telling Child to "come here" in Spanish. At that point, Child began to approach the Tesla. Several adults at the playground—none of whom were related to Child—saw what was happening and surmised that Groce was not Child's parent; one of them even "stood in front of the black Tesla" to prevent Child from going to the car. Groce then closed his car door and fled the scene, but not before some of the adults were "able to obtain a partial license plate" number for the vehicle. The same witnesses also gave police a description of the vehicle as well as

of Groce himself; they indicated that the man in question was "a heavier set white male wearing a black coat and glasses."

¶5      During their ensuing investigation, officers examined footage from traffic cameras in the area, and using that information plus the partial license plate, they were able to match the vehicle in question to Groce. Officers also determined that Groce was a registered sex offender. They located Groce at his house later that day wearing a black coat and glasses, and they found the black Tesla in his garage. Groce's wife told officers that Groce had told her, earlier that day, that "police were most likely on their way to arrest him." Also, one of the adults at the playground identified Groce in a photo lineup.

¶6      On the day after Groce's arrest, a district court judge made an initial determination to hold Groce without bail, entering a temporary pretrial status order and finding "substantial evidence to support the charge" as well as "clear and convincing evidence that [Groce] would constitute a substantial danger to any other individual or to the community . . . if released on bail."

¶7      About a week after the information was filed, Groce filed a motion challenging his pretrial detention. In that motion, Groce asked to be released "with conditions" or, alternatively, for the court to set bail. Groce asserted that the State did not have "substantial evidence" to support the charges and that the State could not demonstrate that Groce was a substantial danger to the community. Groce further argued that "any plausible risks" could be "mitigated by appropriate conditions of release," including GPS ankle monitoring.

¶8      Two days later, on March 1, 2024, the court held a hearing to consider Groce's motion. No witnesses testified at the hearing; instead, the court received "proffers of evidence" and "written descriptions of evidence." Groce asserted that the evidence was "unclear whether . . . witnesses actually saw this wave that

allegedly occurred." He also asserted that only Child could have heard anything Groce said and that the adult witnesses had clarified that they did not hear Groce say anything. Groce asserted that, given these facts, there was not enough evidence that he had taken a "substantial step" toward kidnapping Child. In response, the State offered no new evidence, but it argued that the existing evidence strongly supported holding Groce without bail. In the State's view, when a registered sex offender drives into a playground parking lot, opens his car door, and beckons to a child, there is substantial evidence to support a charge of attempted child kidnapping. The State also pointed out Groce's apparent consciousness of guilt, in that he fled the scene and later told his wife that the police were going to be coming to get him. And it argued that Groce would be a substantial danger to the community if released, because his actions were "predatory" and represented an "escalation" from his previous sex offense (masturbating while watching children at play).

¶9 At the conclusion of the hearing, the court sided with the State and ordered Groce held without bail. First, the court found substantial evidence to support the charges, noting that Groce was a sex offender who visited a parking lot next to a playground, opened his car door, and beckoned to Child. The court observed that this behavior "caused two strangers to be alarmed enough to intercede." And the court noted that Groce had fled the scene, which "exhibit[ed], potentially, a guilty conscience with respect to what he was doing." All of this evidence, in the court's view, gave "rise to an inference that" Groce "was engaged in the act of trying to lure [Child] into his car, perhaps, in an escalation of what occurred" in his previous sex offense case.

¶10 As for whether Groce would be a substantial danger to the community if released, the court stated its "concern" that "there really isn't a set of circumstances" or conditions that could be placed on Groce "that would prevent this kind of behavior from occurring in the future." The court noted that Child was a

"stranger" to Groce, so a no-contact order would not seem to help reduce the danger. The court noted that Groce was a sex offender who had been convicted of masturbating while watching children, and it was concerned that the current situation "appears to be an escalation . . . to the next level of actually having hands-on offenses involving children." The court therefore offered its preliminary view that Groce was a substantial danger to the community and that the danger could not be mitigated by restrictive pretrial conditions of release.

¶11 However, the court observed that it was being asked to make its pretrial detention decision "at the very beginning of" the case based solely on "proffers" and "written descriptions of evidence," which constituted a record that was "not as robust as what we see later at a preliminary hearing or that we learn as the case develops." The court therefore left the door open for the matter to be revisited if "things occur that change the analysis a little bit," and it specifically ordered that a "release recommendation report" be prepared, which the court indicated it would "take a look" at to "see if that changes [the court's] mind." And the court set a date, in three weeks, for a continuation of the detention hearing where the court could consider the release recommendation report. After the hearing, the court entered an order directing "Salt Lake County Pretrial Services to prepare a Release Recommendation Report."

¶12 Three weeks later, on March 22, the court held the continued detention hearing. By that point, the release recommendation report had been prepared, but that report made no specific recommendation, stating merely that the evaluators were "not mak[ing] recommendations on [first-degree-felony] Violent/Sex Offenses; as such, the release determination is at the discretion of the court." The report did, however, say that Groce was not "preoccupied with the alleged victim" and that Groce had a job and could go back home and live with his wife if released. At the follow-up hearing, Groce emphasized these points and

asked for pretrial release, making a specific suggestion that the court "could impose additional restrictions via GPS monitoring that would restrict his location." The State again objected, reiterating its previous positions. After hearing argument from both sides, the district court saw "nothing in the Release Recommendation Report that change[d] [its] mind" that Groce was a "significant risk to the community," noting in particular that GPS monitoring "would tell us where he is, but it wouldn't tell us whether there are children around." The court later memorialized its decision in a written order, dated April 11, denying Groce's motion for pretrial release and ordering that he "be held without bail."

¶13 A few days after the follow-up hearing, Groce filed his first notice of appeal.[1] In the notice, Groce stated that he was appealing "the district court's order on March 22, 2024 denying bail." Later, after the court issued its written order, Groce filed an amended notice of appeal specifying that he was appealing from "the Order Denying Defendant's Release entered April 11."

¶14 While Groce's bail appeal was pending, the criminal case proceeded toward trial. At the March 22 hearing, Groce had requested that the court "set a preliminary hearing fairly quickly," and the court obliged that request, holding a two-day preliminary hearing in April 2024. During that hearing, video footage of the incident in the parking lot was presented, and three people testified: two witnesses who had been at the scene, and a police detective. These witnesses testified to the events described above. Some details were added: Groce had backed his car into the parking stall; the called-in license plate number was incorrect

---

1. "Individuals who are denied bail have a statutory right to immediately appeal the order denying bail, without the necessity of waiting for the entire case to reach a conclusion." *State v. Seat*, 2022 UT App 143, ¶ 17, 523 P.3d 724; *see also* Utah Code § 77-18a-1(1)(d).

because of "an extra zero"; Groce had "half of his body" out of the car, meaning "his leg was out of the car" while his "hand was on the wheel" when he was beckoning Child; the witnesses didn't know Child or her parents before the date of the incident; and Child had started toward the Tesla and reached the sidewalk but had stopped at the sidewalk once one of the witnesses asked where she was going, at which point Groce fled the scene. The witnesses also had a hard time identifying Groce in person; in fact, one of the witnesses identified Groce's brother rather than Groce. And the witnesses also confirmed that they "never heard [Groce] say anything," in reference to the earlier reports that Groce had said "come here" to Child in Spanish. At the end of the hearing, however, the court found that the State had met its burden of establishing probable cause that Groce had committed the charged crimes, and it bound the matter over for trial.

¶15 On May 6, a couple of weeks after the preliminary hearing, the district court—in an unsolicited "order of clarification"—offered additional reasoning for its decision to hold Groce without bail. The court noted that, since its April 11 order, the preliminary hearing had been held, and the court stated that, "[i]f the evidence adduced at the preliminary hearing had persuaded the court that a material change in circumstances justified [Groce's] release from custody notwithstanding the court's [earlier] rulings, the court could and would have revisited its prior detention decision and reconsidered the issue of [Groce's] release." But in an effort "[t]o ensure an efficient presentation of the detention issue to the appellate tribunal," the court clarified "that its decision to continue to detain [Groce] is based both on the evidence proffered and argued at the [two] detention hearings . . . as well as the evidence adduced at the preliminary hearing." Groce did not file an updated notice of appeal indicating that he was specifically appealing from the court's May 6 order of clarification.

¶16 After the preliminary hearing, Groce filed a motion asking the court to quash the bindover. On June 27 (two weeks after

Groce filed his appellate memorandum), the district court held a hearing to consider the motion to quash and, after considering the arguments presented, denied the motion in an oral ruling. At the conclusion of that hearing, Groce asked the court to revisit its decision to hold him without bail. The court denied that request, noting that it had already "addressed that twice" and was not inclined to revisit it again. The court even took the time to read into the record its May 6 order of clarification, in its entirety, stating that "the point of why" it had written "that minute entry in the first place is because [it] didn't want there to be some sort of delay where [the appellate court] made some sort of partial determination and sent it back because it was unclear what [the court had] relied upon." The court then restated that "the totality of all of the evidence that [it had] heard at all of these proceedings" constituted "substantial evidence" to support the charges. Later that day, the court memorialized its ruling in a signed minute entry, stating that "it finds substantial evidence that [Groce] should continue to be held without bail."

¶17 A couple of weeks after the hearing on the motion to quash, Groce filed a second amended notice of appeal, indicating that he was also appealing from "the district court's order denying [his] renewed motion for release (after the preliminary hearing) entered June 27, 2024." In the meantime, the district court case has proceeded apace, with trial currently set for January 2025.

## ISSUES AND STANDARDS OF REVIEW

¶18 Groce appeals the district court's pretrial detention orders, specifically challenging both the court's original pretrial status order—in which the court determined that substantial evidence exists to support the charges, that Groce constitutes a substantial danger to the community, and that there are no workable conditions of pretrial release—and the court's June 27 order denying Groce's motion to modify the original order. "[A] district

court's ultimate determination that substantial evidence exists to support the charge is a law-like mixed question reviewed de novo," but we do give deference to the "factual findings in support of that decision." *Randolph v. State*, 2022 UT 34, ¶ 44, 515 P.3d 444. "A district court's determination that there is clear and convincing evidence that the defendant is a substantial danger . . . is reviewed deferentially, and this court will reverse that determination only if it is clearly erroneous." *State v. Cordova*, 2023 UT App 99, ¶ 6, 536 P.3d 666, *cert. denied*, 540 P.3d 81 (Utah 2023); *accord Randolph*, 2022 UT 34, ¶ 49; *see also id.* ¶ 52 (stating that questions about "[w]hether there are no effective conditions of pretrial release available" are issues we review "for clear error"). And in other contexts, we review a court's determination "regarding the presence or absence of a substantial change in circumstances for an abuse of discretion." *See Harper v. Harper*, 2021 UT App 5, ¶ 11, 480 P.3d 1097 (quotation simplified). We apply that same standard of review here.

¶19 In response, the State not only contests Groce's arguments on their merits, but it also asserts that Groce's appeal has been rendered moot by the district court's subsequent rulings. The question of whether issues presented in an appeal have been rendered moot by events occurring after the appeal has been filed is a question that, by definition, "arises for the first time here" on appeal, and therefore "our decision is not governed by any standard of review, and we decide the matter as a question of law in the first instance." *See Grewal v. Junction Market Fairview, L.C.*, 2024 UT 20, ¶ 12, 554 P.3d 863 (quotation simplified).

¶20 Finally, the parties have filed various motions on appeal. The State has filed two motions to strike, targeting Groce's second amended notice of appeal and parts of Groce's reply memorandum, as well as an addendum Groce appended to his reply memorandum. For his part, Groce has filed a motion to supplement the record. These motions were filed with this court in the first instance, and thus no standard of review is applicable.

*See In re D.G.*, 2022 UT App 128, ¶ 5, 522 P.3d 39, *cert. denied*, 527 P.3d 1106 (Utah 2023).

ANALYSIS

¶21 Before addressing the merits of Groce's appellate challenge to the district court's pretrial detention orders, we first address the State's assertion that Groce's appeal has been rendered moot by subsequent events, namely, the court's later rulings regarding Groce's pretrial detention. And in the process of discussing mootness, we render rulings on the motions that have been filed on appeal. For the reasons discussed, we conclude that the controversy between these parties about Groce's pretrial detention has not been rendered moot, we deny the State's motions to strike, and we grant Groce's motion to supplement the record. Thereafter, we proceed to consider the merits of Groce's arguments, and we affirm the district court's detention orders.

I. Mootness

¶22 The doctrine of mootness is not "a mere matter of convenience or judicial discretion." *Utah Transit Auth. v. Local 382 of Amalgamated Transit Union*, 2012 UT 75, ¶ 27, 289 P.3d 582. Rather, "[m]ootness is a constitutional principle" that implicates our "judicial power" to adjudicate cases, and if the issues presented for our review on appeal have been rendered moot by subsequent events, we lose jurisdiction over the appeal, at which point we have no choice but to dismiss it. *See id.* ¶¶ 18–19, 27.

¶23 Whether an appeal is moot turns on whether the "issues" and "controversy" before the court remain live, and on whether an order granting the requested relief would still be effective. *See id.* ¶ 14 ("An appeal is moot if during the pendency of the appeal circumstances change so that the *controversy* is eliminated, thereby rendering the *relief requested* impossible or of no legal effect."

(quotation simplified) (emphasis added)); *see also State v. Black*, 2015 UT 54, ¶ 10, 355 P.3d 981 ("An *issue* becomes moot if during the pendency of the appeal circumstances change so that the *controversy* is eliminated . . . ." (quotation simplified) (emphasis added)); *Behar v. Johnson*, 2024 UT App 129, ¶ 19 ("An *issue* on appeal is considered moot when the *requested judicial relief* cannot affect the rights of the litigants." (quotation simplified) (emphasis added)). If subsequent events have eliminated the controversy between the parties regarding the salient issues, then any order the court might make would be of no effect and "anything we might say about the issues would be purely advisory." *Utah Transit Auth.*, 2012 UT 75, ¶ 15; *see also Baird v. State*, 574 P.2d 713, 715 (Utah 1978) ("The courts are not a forum for hearing academic contentions or rendering advisory opinions.").

¶24 Before considering the State's mootness argument in the context of this bail appeal, we first pause to note the unique nature of such appeals. Most other appeals from district court come to us after entry of final judgment, and only after the district court has completed its work in the case and adjudicated all claims brought by all parties. *See Copper Hills Custom Homes, LLC v. Countrywide Bank, FSB*, 2018 UT 56, ¶ 10, 428 P.3d 1133 ("As a general rule, an appellate court does not have jurisdiction to consider an appeal unless the appeal is taken from a final order or judgment that ends the controversy between the litigants." (quotation simplified)); *see also In re Estate of Heater*, 2021 UT 66, ¶ 13, 498 P.3d 883 ("For an appellate court to have jurisdiction, there must be no claims pending below." (quotation simplified)). Thus, in most district court appeals, the district court has finished its work before the appellate court begins its own, and therefore the two courts are typically not working on the same case at the same time.

¶25 But there are certain exceptions to the "final judgment rule," including situations in which "the legislature provides a statutory avenue for appealing nonfinal orders." *Id.* ¶ 14 (quotation simplified). One such statutory exception applies here:

a defendant is entitled to appeal, "as a matter of right," from "an order denying bail." Utah Code § 77-18a-1(1)(d). This rule makes intuitive sense: a defendant forced to wait until after the entire criminal case has resolved before being able to appeal a pretrial detention order would—as a practical matter—lose the right to appeal that order, because any controversy about *pretrial* detention will, by definition, have been eliminated by a trial or other completion of the case. Allowing immediate appeals from pretrial detention orders is thus the only way to provide criminal defendants with an avenue for challenging such orders.

¶26 In other contexts in which interlocutory appeals are allowed—for instance, appeals permitted under rule 5 of the Utah Rules of Appellate Procedure—it is not uncommon for a district court to stay the relevant proceedings while the interlocutory appeal runs its course. But this is not a practical alternative in the context of bail appeals. Criminal defendants have a right to a speedy trial, and it is unlikely that defendants would choose—while incarcerated prior to trial—to waive those rights and seek or agree to a stay of the criminal case just so they could mount an interlocutory appeal of a detention order. Given these practical realities, district court activity in a criminal case typically does not cease merely because a defendant appeals a pretrial detention order. Thus, bail appeals present the rather rare scenario in which the appellate court and the district court are working on the same case at the same time.

¶27 Such simultaneous proceedings can present procedural headaches; after all, there is good reason why the rules don't allow this to occur in most cases. A defendant is entitled to—and often does—ask a district court to revisit or reconsider a bail decision at any time, even during the pendency of an appeal challenging the initial pretrial detention order. Groce took advantage of this right in this case, and that fact has created procedural quirks that simply don't arise in a typical appeal.

¶28    Here, the State asserts that Groce's appeal—which is specifically taken from the district court's April 11 pretrial status order and its June 27 order denying Groce's renewed motion for pretrial release—has been rendered moot. As the State sees it, "the district court's initial orders denying [pretrial] release"—presumably referring to the ones entered on March 22 and April 11—"have no practical effect now that two subsequent orders"—presumably referring to the ones entered on May 6 and June 27—"control Groce's continued detention." And while acknowledging that Groce filed a second amended notice of appeal following the district court's June 27 order on his renewed motion, the State maintains that the June 27 order "is not before this court because the appeals have not been consolidated." In addition, the State asserts that "the evidence that the [district] court relied on" to support its June 27 ruling is not before this court, because "Groce has not provided transcripts for the preliminary hearing or the June 27 hearing." We find the State's arguments unpersuasive, for two overarching reasons.

¶29    First, the particular *issues* raised in Groce's appeal have not been rendered moot by subsequent events, there remains a live *controversy* between the parties generally regarding Groce's pretrial detention, and the relief requested by Groce—a determination by this court that the State has not shown substantial evidence to support the charges or clear and convincing evidence that Groce is a substantial danger to the community, and a reversal of the district court's order of pretrial detention—would still, if granted, be effective. As long as Groce remains subject to a court order holding him without bail or release conditions pending resolution of the charges against him, the controversy between these parties regarding pretrial detention remains live.

¶30    In this vein, it is perhaps useful to contrast the present situation with other common situations in which controversies regarding pretrial detention issues are indeed mooted by

subsequent events. In many—perhaps too many—cases, appellate controversy regarding pretrial detention issues ends up moot because the defendant enters into a plea agreement during the pendency of the bail appeal. *See, e.g., State v. Seat*, 2022 UT App 143, ¶¶ 18, 40, 523 P.3d 724 (noting that the appellate issues had been rendered moot when "the court released [the defendant] from jail . . . upon entry of [the defendant's] plea," but also observing that "we do not doubt that, in many cases, jailed defendants may feel pressure, because of their in-custody status, to accept plea bargains that they may not have accepted if they were out of custody"). In those cases, the issues relevant to the pretrial detention appeal are rendered moot by the ultimate resolution of the case. And in other cases, defendants who are initially held without bail and who appeal that status sometimes manage to persuade the district court, during the pendency of the bail appeal, to reconsider the detention order and release them. In such situations, the controversy about pretrial detention status may be rendered moot by the defendant's release.

¶31 But where a defendant remains held without bail prior to trial, the controversy related to pretrial detention—whether substantial evidence exists to support the charges, whether the defendant is a flight risk or a substantial danger, and whether any material change in circumstances has occurred that might justify release—remains as live as ever. We simply disagree with the State's assertion that the district court's subsequent orders continuing to hold Groce without bail pending trial have rendered moot the controversy related to the underlying pretrial detention issues.

¶32 Second, Groce has filed a second amended notice of appeal, incorporating into this appeal a challenge to the district court's latest pretrial detention order: the June 27 order denying his renewed motion for pretrial release and continuing to order him held without bail. Groce filed that later notice of appeal within the parameters of the initial appeal—using the same case number—

and we are therefore somewhat puzzled by the State's contention that a consolidation order would be necessary in order for us to consider the matters referred to in Groce's second amended notice of appeal as part of this case. In this particular situation, there is no second appellate case that could be consolidated into this one.

¶33 Perhaps aware that the presence of the second amended notice of appeal is troublesome for its mootness argument, the State has filed a motion asking us to strike that second notice. In the State's view, "only one pretrial status order can control at any one time," and the State asserts that the district court's May 6 unsolicited minute entry—rather than the April 11 order or the June 27 order—constitutes the operative pretrial status order, and it points out that Groce did not appeal from the May 6 order. While we assume the correctness of the assertion that there is only ever one original "pretrial status order," *see* Utah Code § 77-20-205(2), in our view that order must by definition be the first order in which the court—either at the defendant's first appearance or after a detention hearing—undertakes a complete "substantial evidence" and "substantial danger/flight risk" inquiry, *id.*; *see also id.* § 77-20-201(1)(c). As the State points out, all subsequent requests for modification of that original pretrial detention order are governed by a somewhat different standard, involving not only the "substantial evidence" and "substantial danger/flight risk" inquiry but also the question of whether "there has been a material change in circumstances" that might warrant a change in pretrial detention status. *Id.* § 77-20-207(1)(b).

¶34 As we read the record, the first time the district court made a complete initial "substantial evidence" and "substantial danger" determination, after argument and evidentiary proffer, was in its April 11 order, after it had held a pretrial detention hearing—continued over two days—and reviewed the release recommendation report. Although the court made certain findings at the conclusion of the March 1 part of that hearing, the court stated that it "would like to see a release recommendation

report" containing information about potential pretrial release options before finalizing its decision regarding Groce's pretrial detention. After considering the eventual release recommendation report and entertaining argument at a continued hearing, the court then issued a written order memorializing its determination to keep Groce in custody, without bail, pending the resolution of his charges. In our view, that April 11 order is the original "pretrial status order" as that term is defined in section 77-20-205(2). And Groce properly appealed from that order, as indicated in his original notice of appeal and in his first amended notice of appeal.

¶35 All subsequent orders regarding pretrial detention, then, will by definition arise in the context of reconsideration. A defendant being held without bail prior to trial is always free to ask the district court to reconsider his or her detention status, but governing statutes require a showing of "a material change in circumstances" before the court orders a change in the defendant's detention status. *See id.* § 77-20-207(1)(b). The district court's May 6 order—entered sua sponte after completion of the preliminary hearing—falls into this category; indeed, the court specifically stated, in its order, that "the evidence adduced at the preliminary hearing" did not "persuade[] the court that a material change in circumstances" had occurred that "justified [Groce's] release from custody." And the district court's latest order denying Groce's renewed motion for release—entered on June 27—also falls into this category; indeed, at the June 27 hearing, the court read aloud its May 6 order, again stating that it was not "persuaded" that there had been "a material change in circumstances [that] justified [Groce's] release from custody."

¶36 A defendant has a statutory right to mount an immediate appeal from pretrial detention orders. *See id.* § 77-20-209; *see also id.* § 77-18a-1(1)(d). But while, as noted, we agree that there is only one *original* "pretrial status order," *see id.* § 77-20-205(2), we disagree with the State's contention that there is only ever one

order regarding pretrial detention, in any given case, from which an appeal can be taken. The relevant statute reads as follows:

> If a magistrate or judge issues *a* pretrial status order that orders the individual be detained during the time the individual awaits trial or other resolution of criminal charges, the individual has the right to an expedited appeal of *the* pretrial status order.

*Id.* § 77-20-209 (emphasis added). The State focuses on the word "the" in the second clause, and it infers therefrom that "only one pretrial status order can control at any one time" and that only that order is appealable. But as we read this statutory provision, the phrase "the pretrial status order" in the second clause is simply referring back to the phrase "a pretrial status order" in the first clause. The better reading of this statute is that a defendant may appeal "a pretrial status order" that orders pretrial detention. And in this context, the indefinite article is broad enough to mean "any" such pretrial detention order. *See Graphic Packaging Int'l Inc. v. Labor Comm'n*, 2021 UT App 82, ¶ 24, 495 P.3d 228 ("The indefinite article 'a' can mean 'any,' or can be used as a function word before a mass noun to denote a particular type or instance." (quotation simplified)); *see also South Dearborn Env't Improvement Ass'n v. Department of Env't Quality*, 917 N.W.2d 603, 612 (Mich. 2018) ("'A' is an indefinite article, which is often used to mean 'any.'"). Thus, a defendant may appeal not only the original pretrial detention order, but also subsequent orders in which the court keeps the defendant in pretrial detention.

¶37    In passing, we offer some guidance to courts and litigants as to how such appeals should be managed. A defendant must file a separate notice of appeal from each pretrial detention order that he or she intends to challenge, and each such notice must be filed within thirty days of the entry of the challenged order. *See* Utah R. App. P. 4(a) (setting forth the thirty-day appeal deadline). Subsequent notices of appeal may be filed independently, as

separate cases with separate case numbers, or they may be filed as amended notices of appeal in the pending appellate case. Following the filing of any subsequent notice of appeal, the litigants may make appropriate motions (for consolidation, for supplementation of the record, for supplemental briefing, etc.) regarding management of the appeal. Because bail appeals must be handled with all possible dispatch, we encourage parties to streamline this process as much as possible. And as discussed in more detail below, a defendant's challenge to a subsequent pretrial detention order must meet a somewhat higher merits bar than the challenge to the original pretrial status order.

¶38 Applying these principles here, we conclude that Groce's appeal is procedurally proper. His original notice of appeal involves a challenge to the court's original pretrial status order, in which the court found substantial evidence supporting the charges as well as that Groce was a substantial danger to the community. Groce filed his appeal from that order within thirty days of its entry, and he has a statutory right to mount that appeal now, rather than waiting until the conclusion of his criminal case. In addition, by filing the second amended notice of appeal, Groce is also challenging the district court's June 27 order denying his motion for modification of the original pretrial status order; in connection with that ruling, the court determined that there had not been a material change in circumstances, and it indicated that Groce was still a substantial danger to the community. We see no procedural problems with Groce's efforts to bring both of his pretrial detention challenges to this court.

¶39 Specifically, we conclude that Groce's challenge to the propriety of the district court's original pretrial status order has not been mooted by the court's subsequent orders regarding Groce's modification requests. Those later requests are governed, at least in part, by a different statutory requirement, *compare* Utah Code § 77-20-201(1)(c), *with id.* § 77-20-205(1)(b), and the governing statutes allow defendants to appeal multiple pretrial

detention orders, *see id.* § 77-20-209. Moreover, no aspect of the court's subsequent rulings eliminated the controversy between these litigants regarding Groce's pretrial detention status. On this basis, we reject the State's mootness argument.

¶40   In so doing, we deny the State's motion to strike Groce's second amended notice of appeal. In our view, Groce's effort to amend the scope of this appeal to include a challenge to the June 27 order is procedurally sound. And for similar reasons, we also deny the State's motion to strike parts of Groce's reply memorandum, and we grant Groce's motion to supplement the record to add items—for instance, the transcript of the preliminary hearing—that the court considered in rendering its June 27 decision.

## II. The Merits of the Pretrial Detention Orders

¶41   We turn now to the merits of Groce's challenges to the district court's pretrial detention orders. As noted, Groce's appeal encompasses a challenge to two such orders: (a) the court's original pretrial status order, entered on April 11, and (b) the court's order, entered as a signed minute entry on June 27, denying Groce's motion for a modification of the original order. We address each challenge, in turn, and discern no error or abuse of discretion in either order; on that basis, we reject Groce's challenges on their merits.

### A. The Original Pretrial Status Order

¶42   Our state constitution provides that, subject to three exceptions, "[a]ll persons charged with a crime shall be bailable." Utah Const. art. I, § 8(1). One of those three exceptions is relevant here, and it applies to the following individuals, who are *not* entitled to bail:

[P]ersons charged with any other crime, designated by statute as one for which bail may be denied, if there is substantial evidence to support the charge and the court finds by clear and convincing evidence that the person would constitute a substantial danger to any other person or to the community or is likely to flee the jurisdiction of the court if released on bail.

*Id.* art. I, § 8(1)(c). These constitutional principles have been codified in statute; the relevant provisions provide that an individual charged with a crime "shall be admitted to bail as a matter of right," unless that individual is both (1) "charged with . . . a felony when there is substantial evidence to support the charge," and (2) found "by clear and convincing evidence" to be either "a substantial danger to any other individual or to the community after considering available conditions of release," or "likely to flee the jurisdiction of the court if the individual is released on bail." Utah Code § 77-20-201(1)(c). And under Utah's current statutory scheme, these requirements govern a court's determination as to whether, "[a]fter hearing evidence" at a "pretrial detention hearing," it should "order detention." *See id.* § 77-20-206(4), (5) (referring specifically to section 77-20-201(1) as setting the substantive standards to be applied at a pretrial detention hearing). The district court here correctly looked to these principles in entering its original pretrial status order.

¶43 Applying these standards, the court found, in its original pretrial status order, that substantial evidence supported the charges against Groce. And while it did not find that Groce was a flight risk or that Groce was a substantial danger to any discrete individual, it did find, by clear and convincing evidence and after considering available release conditions, that Groce was a substantial danger to the community. Groce challenges both of these determinations, which we address in turn.

1.       Substantial Evidence to Support the Charges

¶44   Our supreme court has explained that "the purpose of the substantial evidence standard" in the bail context "is to ensure that the quantum of evidence presented by the State sufficiently justifies the denial of the defendant's right to freedom from pretrial incarceration." *Randolph v. State,* 2022 UT 34, ¶ 74, 515 P.3d 444. The necessary "quantum of evidence," in this context, is enough evidence to provide "a reasonable basis for a guilty jury verdict." *Id.* ¶¶ 73–74. And since in criminal cases a jury must find a defendant guilty beyond a reasonable doubt, "[t]he substantial evidence standard is met when the prosecution presents evidence capable of supporting a jury finding that the defendant is guilty beyond a reasonable doubt." *Id.* ¶ 73. To meet this standard, the prosecution's case need not be entirely airtight; indeed, "[e]vidence may be substantial even in the face of contradicting pieces of credible evidence." *Id.* ¶ 77; *see also id.* ¶ 80 (observing that the defendant had, at the bail hearing, "poked holes" in the State's case, but stating that "poked holes do not demand that the district court conclude that the substantial evidence standard has not been satisfied"); *Chynoweth v. Larson*, 572 P.2d 1081, 1082 (Utah 1977) (stating that the evidentiary issue at a pretrial detention hearing is "whether the facts adduced by the State, notwithstanding contradiction of them by defense proof, warrant the conclusion that if believed by a jury they furnish a reasonable basis for a [guilty] verdict" (quotation simplified)). Ultimately, "[t]he district court's task is to decide whether the State has, even in light of the defendant's contrary evidence, placed into the record evidence sufficient to permit a reasonable jury to conclude that the defendant committed the charged offense." *Randolph*, 2022 UT 34, ¶ 77.

¶45   In examining whether substantial evidence exists to support a charge, a district court must of course keep in mind the elements of the relevant charge. Here, Groce was charged with attempted child kidnapping. The crime of child kidnapping

requires the State to prove that the defendant "intentionally or knowingly, without authority of law, and by any means and in any manner, seizes, confines, detains, or transports a child without the consent of the child's parent or guardian." Utah Code § 76-5-301.1(2). And Utah's attempt statute requires the State to prove that the defendant "engage[d] in conduct constituting a substantial step toward commission of the crime." *Id.* § 76-4-101(1). Thus, to convict Groce of this crime at trial, the State will have to prove, beyond a reasonable doubt, that Groce intentionally or knowingly took actions that constituted a "substantial step" toward seizing, confining, detaining, or transporting Child, without authority of law and without the consent of her parents. In the bail context, the relevant question is whether the State presented "substantial evidence" to support its case, which (as noted) here means "evidence capable of supporting a jury finding" at trial, beyond a reasonable doubt, that Groce committed the crime. *See Randolph*, 2022 UT 34, ¶ 73.

¶46 In challenging the district court's "substantial evidence" determination, Groce makes two related arguments. First, Groce asserts that the State did not present "substantial evidence" that Groce took a "substantial step" toward commission of the charged crime. Second, Groce asserts that the State has not sufficiently demonstrated that his conduct "corroborated an *intent* to kidnap" Child. (Emphasis added.) As Groce characterizes the facts, all the State has shown is that he drove into a parking lot next to a playground and, while still in his car, beckoned to Child. And he argues that this conduct falls "woefully short of a substantial step" toward intentionally kidnapping Child.

¶47 To constitute a "substantial step" toward commission of a crime, an action must be "something more than mere preparation" to commit it; instead, the action must constitute "a tangible step toward commission of [the] crime that transcends intent yet fails to culminate in its planned accomplishment." *State v. Arave*, 2011 UT 84, ¶ 30, 268 P.3d 163 (quotation simplified).

And our supreme court recently clarified that "substantial step" and "intent" are closely linked, because "'conduct constitutes a substantial step if it strongly corroborates the actor's' intent to commit the underlying crime." *State v. Smith*, 2024 UT 13, ¶ 24, 548 P.3d 874 (quoting Utah Code § 76-4-101(2)). Here, the State asserts that Groce's conduct "strongly corroborated his intent to kidnap" Child, and that the facts presented to the district court at the detention hearing "provide a reasonable basis, based on human experience, for a jury to conclude that Groce intended and took a substantial step to kidnap" Child. We agree with the State.

¶48    The district court did not err in concluding that the evidence presented at the detention hearing constituted "substantial evidence" that Groce had taken a "substantial step" toward intentionally seizing, confining, detaining, or transporting Child. To start with, we note that Groce is a registered sex offender—whose previous offense involved masturbating while watching children—who drove to a parking lot next to a playground and beckoned to a child he did not know. These overarching facts are quite unfavorable for Groce. *See id.* ¶ 20 (determining that the defendant had taken a "substantial step" toward, among other charges, attempted child kidnapping, when he drove to the location where he believed the victim was located and took actions aimed at inviting her "to get into his car").

¶49    But as the State points out, the granular-level facts here clinch the point that a jury could reasonably draw a non-speculative inference that Groce intended to kidnap Child. For instance, Groce backed his car into the parking stall, which allowed for a quicker and easier escape from the parking lot. He did not just wave at Child, as though to say "hello"; instead, he beckoned to Child, clearly inviting her to approach his car. At the time he beckoned to Child, Groce's car door was open and his body was halfway outside the car. Child responded to Groce's beckoning gesture by actually proceeding toward Groce's car. Adults who witnessed this interaction—and who did not know

either Groce or Child—believed that something untoward was occurring, and they took steps to intervene. Thereafter, Groce fled the scene rather than engage with the adult witnesses and offer a benign explanation for his actions, a fact the district court believed might connote consciousness of guilt.

¶50    From these facts, a jury could reasonably infer—without engaging in improper speculation—that Groce intended to seize, confine, detain, or transport Child. *See Salt Lake City v. Carrera*, 2015 UT 73, ¶ 12, 358 P.3d 1067 (stating that "the difference between an inference and speculation depends on whether the underlying facts support the conclusion"). The fact that some conflicting evidence exists—for instance, that Groce never got all the way out of his car or that the witnesses never actually heard him say "come here" to Child—and that certain inferences must be drawn from the evidence in order for it to be sufficient to support a finding that Groce took a "substantial step" toward intentionally seizing, confining, detaining, or transporting Child does not mean that the evidence does not constitute "substantial evidence" for purposes of a pretrial detention inquiry. In our view, after hearing the evidence presented, a reasonable jury could conclude, beyond a reasonable doubt, that Groce committed the crimes with which he is charged. *See Randolph*, 2022 UT 34, ¶ 77. And that is enough to satisfy the "substantial evidence" standard for pretrial detention.

2.    Substantial Danger

¶51    Next, Groce challenges the district court's determination that he constitutes a substantial danger to the community. We see no error, let alone clear error, in the court's determination.

¶52    Groce asserts that the district court failed to give sufficient weight to certain aspects of the case that favor him. For instance, Groce points out that he "was gainfully employed until the time of his arrest" and has a "security clearance" to work for a "military

contractor." He points out that he does "not have a lengthy criminal history," with just one previous misdemeanor conviction, and that his history includes "no allegations of violence." And he notes that the "individuals involved in the present case are strangers to" him.

¶53     The district court was aware of these facts. It held off on making a final decision regarding Groce's pretrial detention until after it had reviewed a "release recommendation report," which not only contained all of the facts Groce now emphasizes but also additional facts useful to Groce, including that he had strong family support and a successful supervision history on his previous conviction. The court took a commendably holistic view of the facts here, and Groce's complaint about the manner in which the court weighed those facts is simply not well taken given our deferential standard of review.

¶54     Moreover, the court considered possible conditions of pretrial release, but it rejected GPS monitoring in this situation because while it "would tell us where [Groce] is, . . . it wouldn't tell us whether there are children around." The court also noted that no-contact orders wouldn't be of any use either, precisely because Child had been a stranger to Groce. Indeed, the "stranger-danger" aspect to this case appeared to be important to the court's conclusion that Groce constituted a substantial danger not just to any particular individual but to the community at large, a determination we certainly do not consider clearly erroneous.

¶55     Finally, Groce asserts that the court's "substantial danger" determination required "pure speculation," especially the court's musing that the current situation "appears to be an escalation" from Groce's previous sex offense "to the next level of actually having hands-on offenses involving children." While we agree that this reasoning certainly involves an inference, we do not think it was an unfair one. Courts do not act inappropriately when they consider a defendant's criminal history in making pretrial

detention decisions, and the court did not err here by considering Groce's previous offense and by drawing reasonable inferences from that conviction as applied to Groce's current charge.

¶56    Accordingly, we discern no error, let alone a clear one, in the district court's determination that Groce constitutes a substantial danger to the community. We therefore reject all of Groce's challenges to the court's original pretrial detention order.

## B. The June 27 Order Denying Release

¶57    Next, we examine Groce's appellate challenge to the court's June 27 order denying his renewed motion for bail or pretrial release. This motion constituted a request for modification of the court's original pretrial status order. *See* Utah Code § 77-20-207. To succeed on the merits of such a request, the movant carries an additional burden not present during the original inquiry: the movant must show "that there has been a material change in circumstances." *Id.* § 77-20-207(1)(b). That is, if circumstances have not materially changed since the entry of the then-operative pretrial status order, the governing statute requires the district court to deny the request for modification on that ground alone, without engaging anew in the substance of the inquiry discussed in the previous section and mandated by Utah law. *See id.* § 77-20-201(1)(c).

¶58    Groce's argument for modification was grounded in the evidence presented at the preliminary hearing, at which witnesses appeared and testified under oath. And his appellate challenge is similarly grounded, although as we interpret it, it is limited to the "substantial evidence" part of the legal test. In essence, Groce asserts that the evidence presented at the preliminary hearing materially changed the factual landscape and compels a

determination that there is no longer substantial evidence to support the charge against him.[2] We disagree.

¶59   As the district court noted in its lengthy oral ruling denying Groce's motion to quash the bindover, the evidence presented at the preliminary hearing—including video footage of the encounter in the playground parking lot—strongly supports the State's case. The court noted that Groce was a "registered sex offender" who "was driving slowly through the parking lot" in "a location next to a park where he arguably shouldn't have been." Witnesses testified that Groce "was beckoning to" Child, who

---

2. For purposes of our analysis, we presume—in Groce's favor, given the fact that the May 6 order of clarification was not the result of a motion for modification—that the relevant inquiry involves comparing the situation as of April 11 (when the original pretrial status order was entered) with the situation as of June 27 (when Groce made his motion for modification). By making that presumption, we are able to include in our analysis the evidence adduced at the preliminary hearing. However, we note the strength of the State's assertion that the proper comparison should be between the situation as of May 6 (the date of the court's order of clarification) and the situation as of June 27; the preliminary hearing occurred before May 6, and not even Groce contends that any new information came to light between May 6 and June 27 that could have changed the district court's analysis. Regardless of which comparison we make, however, we agree with the State that, in this case, the court did not abuse its discretion in determining that no material change of circumstances had occurred. We note, by way of guidance, that in considering whether a change in circumstances has occurred for purposes of deciding a motion for modification of a pretrial detention order, district courts should ordinarily compare the situation as of the date of the motion with the situation as of the date of the last (and operative) detention order.

"was playing at the park, about ten feet away from" Groce's car. The witnesses who saw Groce beckon to Child "confront[ed]" him, at which point he "fled the scene . . . at a high rate of speed" and then told his wife that "he may be in custody later on in the day." After watching the video footage, the court noted that "[i]t looked like" Groce "engaged in a substantial step" toward commission of child kidnapping.

¶60    We recognize that, in making its ruling on the motion to quash, the court was applying a "probable cause" standard in the bindover context. But after making that ruling, the court addressed Groce's renewed motion to modify pretrial detention, and it expressly shifted from the "probable cause" standard applicable to bindover to the "substantial evidence" standard applicable to detention determinations. And in this new context, it considered the additional evidence presented at the preliminary hearing, and it concluded—in its sua sponte May 6 order of clarification, which it read into the record at the June 27 hearing— that there had not been "a material change in circumstances" that "justified [Groce's] release from custody."

¶61    Groce resists this conclusion by pointing out several additional details that emerged in the preliminary hearing that had not been disclosed to the court previously. We acknowledge that certain new details were adduced at the preliminary hearing, including the fact that none of the witnesses heard Groce actually say anything to Child. But the State's basic case remained substantively unchanged, both before and after the preliminary hearing. On this record, we perceive no abuse of discretion in the district court's determination that there had been no "material change in circumstances" sufficient to justify a modification to Groce's pretrial detention. On this basis, we reject Groce's challenge to the district court's June 27 order.

CONCLUSION

¶62     Groce's appeal is not moot, because the controversy at the center of the case—whether Groce is lawfully being held in custody without bail pending the resolution of his criminal charges—has not been eliminated by subsequent events. Groce is entitled to appeal both the original pretrial status order as well as later detention orders, and he acted procedurally properly by filing an amended notice of appeal to incorporate a later order.

¶63     On the merits of his appeal, however, Groce has not persuaded us that the district court committed reversible error. Substantial evidence exists to support the charges against Groce. The district court did not clearly err in determining that Groce is a substantial danger to the community. And it did not abuse its discretion in concluding that no material change in circumstances had occurred since the original pretrial status order that would justify a change in Groce's pretrial detention status. We therefore reject all of Groce's appellate challenges on their merits.

¶64     Affirmed.

————————